## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ERNEAL DAVIS**                                                    **CIVIL ACTION**

**versus**                                                         **NO. 12-3042**

**N. BURL CAIN, WARDEN**                                           **SECTION: "H" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Erneal Davis, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On October 25, 2000, he was convicted of second degree murder under Louisiana law.[1]  On June 3, 2003, after various proceedings in the state courts, he was ultimately sentenced on that conviction to a term of life imprisonment without benefit of probation,

---

[1] State Rec., Vol. VII of XI, transcript of October 25, 2000, pp. 148-49; State Rec., Vol. I of XI, minute entry dated October 25, 2000; State Rec., Vol. I of XI, jury verdict form.

parole, or suspension of sentence.[2]  After he was granted an out-of-time appeal,[3] the Louisiana Fifth

Circuit Court of Appeal then affirmed his conviction and sentence on September 14, 2010,[4] and the

Louisiana Supreme Court denied his related writ application on April 1, 2011.[5]

On or about December 8, 2011, petitioner filed with the state district court a post-

conviction application[6] which was denied on March 21, 2012.[7]  His related writ applications were

likewise denied by the Louisiana Fifth Circuit Court of Appeal on June 1, 2012,[8] and by the

Louisiana Supreme Court on October 26, 2012.[9]

Petitioner thereafter filed the instant federal application seeking federal *habeas*

*corpus* relief arguing that he received ineffective assistance of counsel.[10]  The state conceded that

---

[2] State Rec., Vol. VIII of XI, transcript of June 3, 2003; State Rec., Vol. III of XI, minute entry dated June 3, 2003.

[3] State Rec., Vol. IV of XI, Order dated November 6, 2007; see also State v. Davis, No. 07-KH-633 (La. App. 5th Cir. Nov. 2, 2007); State Rec., Vol. IV of XI.

[4] State v. Davis, 45 So.3d 203 (La. App. 5th Cir. 2010) (No. 09-KA-1109); State Rec., Vol. V of XI.

[5] State v. Davis, 60 So.3d 1249 (La. 2011) (No. 2010-KO-2585); State Rec., Vol. V of XI.

[6] State Rec., Vol. V of XI.

[7] State Rec., Vol. V of XI, Order dated March 21, 2012.

[8] Davis v. Cain, No. 12-KH-403 (La. App. 5th Cir. June 1, 2012); State Rec., Vol. XI of XI.

[9] State *ex rel.* Davis v. State, 99 So.3d 649 (La. 2012) (No. 2012-KH-1528); State Rec., Vol. XI of XI.

[10] Rec. Doc. 3.

the application was timely and that petitioner had exhausted his remedies in the state courts.[11]  Long after the state filed its response, petitioner amended his federal application to add two additional claims.[12]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[11] Rec. Doc. 14, p. 7.

[12] Rec. Docs. 15 and 16.

As to pure questions of law and mixed questions of law and fact, a federal court must

defer to the state court's decision on the merits of such a claim unless that decision "was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not

- 4 -

> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary
> conclusion was unreasonable.
>     If this standard is difficult to meet, that is because it was
> meant to be.  As amended by AEDPA, § 2254(d) stops short of
> imposing a complete bar on federal court relitigation of claims
> already rejected in state proceedings.  It preserves authority to issue
> the writ in cases where there is *no possibility* fairminded jurists could
> disagree that the state court's decision conflicts with this Court's
> precedents. It goes no farther.  Section 2254(d) reflects the view that
> habeas corpus is a guard against *extreme malfunctions* in the state
> criminal justice systems, *not a substitute for ordinary error
> correction through appeal*.  *As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the state
> court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –from

- 5 -

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> The following testimony was elicited at the defendant's trial:
> Leroy Mitchell testified that he and a group of people frequently played a card game known as "spades" in an empty lot at the intersection of Fourth Street and Ames Boulevard in Marrero every day.  Mr. Mitchell described the spades game as a friendly neighborhood game.
> On February 3, 2000, Mr. Mitchell went to the lot between 7:00 and 7:30 p.m.  While at the lot, a man he later identified in [sic] as the defendant passed by him and struck the victim, Wayne Wilson, with a two-by-four piece of wood.  Mr. Mitchell testified that he told the defendant "Please stop," but the defendant continued to hit Mr. Wilson with the two-by-four.  Mr. Mitchell testified that Mr. Wilson was either asleep or drunk at the time of the defendant's attack, and that the man never woke up.  Mr. Mitchell further testified that Mr. Wilson did not threaten the defendant prior to the attack, nor did the man have any weapons in his hand.
> On cross-examination, Mr. Mitchell admitted that he and three other friends present at the lot had drunk two or three "fifths" of wine between them that day.  Mr. Mitchell also testified on cross-examination that he did not know the defendant or Mr. Wilson and that Mr. Wilson had not been playing spades at the time of the defendant's attack.
> John W. Brent testified that on February 3, 2000, he was at the lot on the corner of Ames Boulevard and Fourth Street playing spades.  Mr. Brent testified that he observed the defendant beat another man in the head with a two-by-four.  Mr. Brent further testified that Mr. Wilson did not threaten, aggravate, or speak to the defendant prior to being subjected to the defendant's attack, and that Mr. Wilson was sitting down before being hit.
> On cross-examination, Mr. Brent testified that Mr. Wilson was awake at the time of the defendant's attack and that he was

drinking beer.  He further testified that the defendant's attack took place at approximately 5:30 p.m.

Lieutenant Don English of the Jefferson Parish Sheriff's Office was the lead investigator in Mr. Wilson's homicide. Lieutenant English testified that he and other deputies were able to locate several witnesses to Mr. Wilson's death.  After those witnesses were interviewed, the defendant became the only suspect in Mr. Wilson's homicide.  Lieutenant English testified that he presented a photographic lineup to Kenneth Champagne and John W. Brent. Messrs. Champagne and Brent both positively identified the defendant as the person who killed Mr. Wilson.

Lieutenant English thereafter arrested the defendant and informed him of his <u>Miranda</u> rights.  The defendant agreed to waive his rights and give a statement to the police.  In his statement, which was played for the jury, the defendant admitted striking Mr. Wilson with a two-by-four.  The defendant stated that he did so because Mr. Wilson made him angry by talking about another man's girlfriend.

Dr. Susan Garcia was accepted as an expert in the field of medical pathology.  She performed an autopsy on Mr. Wilson.  Dr. Garcia testified that Mr. Wilson had sustained at least four separate blows to the rear of his skull.  Mr. Wilson's skull had been fractured as a result of one of the blows.  According to Dr. Garcia, this blunt-force trauma caused Mr. Wilson's lethal injury.

Dr. Garcia testified that Mr. Wilson had elevated levels of alcohol at the time of his death.  She did not detect any illicit drugs in Mr. Wilson's system.  Dr. Garcia thereafter testified that autopsy photographs were taken of Mr. Wilson.  At that time, defense counsel objected to the introduction of several autopsy photographs depicting Mr. Wilson's brain after it had been surgically removed by medical technicians.  Two photographs (state's exhibit 6 and state's exhibit 7) were admitted into evidence over the defense's objection.

Dr. Garcia thereafter testified that the photograph marked as state's exhibit 6 was a photograph of the top portion of Mr. Wilson's brain after it had been removed from the skull.  Dr. Garcia noted that the photograph contains dark areas, which were areas of hemorrhage or bleeding into the tissue that covered the surface of the brain. According to Dr. Garcia, the dark areas indicated that the force of the blow was sufficient enough to pass through the skull and cause underlying injury to the cerebral or brain tissue.  Dr. Garcia testified that the photograph marked as state's exhibit 7 was a photograph of the bottom of Mr. Wilson's brain.  Dr. Garcia indicated that state's exhibit 7 contained the same dark areas as state's exhibit 6 and that

those dark areas are consistent with hemorrhage to the rear of the skull. Dr. Garcia explained that state's exhibits 6 and 7 also indicated that Mr. Wilson had incurred a "contrecoup injury," which occurs when the blow was to the back of the head and the portion of the brain that showed an injury was "away from or contrecoup to the initial insult." Put differently, in a contrecoup injury, the force of a blow to the rear of the head causes the brain to impact the anterior (i.e. front) portion of the skull, which in turn causes hemorrhaging to the front of the brain.

The defendant testified that, on February 3, 2000, he woke up at his mother's house, drank "a couple" of beers and smoked some crack cocaine. He went to the Fourth Street lot to "chill out" and to drink wine with his father. The defendant testified that he brought a bottle of Thunderbird with him, which he and his father drank. Later, the defendant's father gave the defendant some money, and the defendant bought a "fifth" of Thunderbird. The defendant returned to the Fourth Street lot and drank some more Thunderbird with his father. While the defendant and his father were drinking, Kenneth Champagne, John Brent, and Otis sat down and began to play cards.[FN3]

[FN3] Otis's last name is not indicated in the record.

While Kenneth Champagne, John Brent and Otis were playing cards, the defendant and Mr. Wilson began arguing. The defendant testified that he thought Mr. Wilson was insulting another man's girlfriend, and he told Mr. Wilson to "cool out." Mr. Wilson told the defendant that he was from New Orleans and that he had "grown up with killers," which the defendant understood to be a threat. The defendant became angry, threw the cards on the table, and began to walk away from the lot. According to the defendant, Mr. Wilson began taunting him as he began to leave. Mr. Wilson asked him, "What you want to do?," and started to walk towards the defendant. The defendant testified that he picked up a "stick" and hit Mr. Wilson with it "once or twice."

On cross-examination, the defendant stated that the Mr. Wilson never lifted his hand to him and "never put his hands" on him. The defendant admitted that he lied when he told an investigating officer that he was sober when he struck Mr. Wilson with the two-by-four. The defendant also admitted that he lied when he told an investigating officer that Mr. Wilson raised a bottle to strike him.

Lionel Davis, the defendant's uncle, testified that on February 3, 2000, he was in the Fourth Street lot playing cards with approximately eight other men.  Mr. Davis indicated that he was not drinking that day.  According to Mr. Davis, Mr. Wilson told one of the men at the Fourth Street lot that he had molested the man's stepdaughter, and the defendant thereafter told Mr. Wilson to "lay low," and "stay out of this here."  Mr. Davis testified that Mr. Wilson had a bottle of wine in his hand, and that he raised the bottle above his head several times.  The defendant told Mr. Wilson to leave him alone several times.  Mr. Davis testified that he heard Mr. Wilson tell the defendant that he had killed a person before.  Mr. Davis further testified that Mr. Wilson thereafter swung at the defendant with the bottle.  The defendant ducked, picked up "something," and hit Mr. Wilson one time.[13]

### III.  Petitioner's Claim in His Original Application

In his original federal application, petitioner claimed that he received ineffective assistance of counsel.  On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

> In his sole counseled assignment of error, the defendant contends that the trial judge erred by denying his "Motion to Dismiss Appeal Without Prejudice and Remand for a Hearing on Post Trial Motion or, in the alternative, To Abate Post Trial Motion and Reset Briefing Delays."   The defendant contends that the trial court erred in denying the motion because his counsel was ineffective for failing to consult with him prior to the start of trial.
>
> At the August 31, 2009, hearing counsel for the defendant contended that the defendant's ineffective assistance claims must be analyzed under the two pronged test outlined by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
>
> Generally, a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution.

---

[13] State v. Davis, 45 So.3d 203, 207-09 (La. App. 5th Cir. 2010) (No. 09-KA-1109); State Rec., Vol. V of XI.

To prove ineffective assistance of counsel under <u>Strickland</u>, a defendant must show both that his attorney's performance was deficient, and that the deficiency prejudiced him.  <u>Id</u>. at 687, 104 S.Ct. 2052.  An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable."  <u>Id</u>.  To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different.  <u>Id</u>. at 694, 104 S.Ct. 2052.

For the first time on appeal, the defendant contends that he was denied counsel during a critical stage of the proceedings.  The defendant contends that as a result, the second prong of the <u>Strickland</u> test, that of prejudice, should have been presumed under <u>United States v. Cronic</u>, 466 U.S. 648, 659, n.25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

In <u>Cronic</u>, the Supreme Court created limited exceptions to the application of <u>Strickland</u>'s two-part test in situations that "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  <u>Cronic</u>, 466 U.S. at 658, 104 S.Ct. at 2046.  The Supreme Court identified three situations implicating the right to counsel where prejudice must be presumed.  First are those situations in which a defendant petitioner is denied counsel at a "critical stage of his trial" or is afforded a "complete denial of counsel."  <u>Cronic</u>, 466 U.S. at 659, 104 S.Ct. at 2047.  Second are those situations in which a defendant's trial counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing[.]"  <u>Id</u>.  Finally, prejudice is presumed when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."  <u>Id</u>. at U.S. at 659-60, 104 S.Ct. at 2047 (citing <u>Powell v. Alabama</u>, 287 U.S. 45, 57-58, 53 S.Ct. 55, 59-60, 77 L.Ed. 158 (1932)).

The Sixth Amendment does not guarantee a defendant errorless counsel or counsel judged ineffective by hindsight.  <u>State v. Cambre</u>, 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 460, <u>writ denied</u>, 06-2121 (La. 4/20/07), 954 So.2d 158, (citing <u>State v. LaCaze</u>, 99-584 (La. 1/25/02), 824 So.2d 1063, 1078, <u>cert. denied</u>, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002)).  Ineffective assistance claims are assessed on the facts of the particular case as seen from the counsel's perspective at the time.  As such, there is a strong presumption that counsel's conduct will fall within the wide range of reasonable professional assistance.  <u>Id</u>.

An ineffective assistance of counsel claim is usually most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted.  State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595.  However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy.  Id.

In this instance, the record is sufficient to address the defendant's claim of ineffective assistance of counsel because the trial court was able to question the defendant's trial counsel at the August 31, 2009 hearing.

**The August 31, 2009 Hearing on Defendant's Ineffective Assistance of Counsel Claim**

At the August 31st hearing, Katherine Guste testified that she was the defendant's trial counsel in this matter.  At the time of the hearing, Ms. Guste had been employed with the Jefferson Parish Public Defender's Office for approximately 14 years.  Ms. Guste testified that she recalled the case and its facts "like it was yesterday," however, she had no notes regarding the case.  Ms. Guste was certain that she met with the defendant to prepare for the motions prior to the October 10, 2000 pretrial hearing on the defendant's motion to suppress.

Ms. Guste testified that she and the defendant discussed his case prior to trial, but could not recall where or when they discussed the case.  Ms. Guste recognized Defense Exhibit A as a request for funds dated May 3, 2000 to hire Keith Lobrano to interview witnesses in this case.  Ms. Guste explained that Mr. Lobrano always reported to her when she hired him, and she was certain they had discussed the facts of this case.  Ms. Guste recognized Defense Exhibit B as an additional request for funds dated December 4, 2000. Ms. Guste believed that Exhibit B was a form that Jefferson Parish officials executed to ensure that Mr. Lobrano would be paid for the work he performed on this case.  Ms. Guste did not have an independent recollection of any reports that were produced as a result of Mr. Lobrano's investigation.

Ms. Guste was adamant that she "knew what this case was about," and that she was aware of the procedural issues of the case. Ms. Guste maintained that, at the time this matter proceeded to trial, she was ready for trial.  According to Ms. Guste, she knew that she was ready for trial because she did not ask for a continuance prior to trial.

On cross-examination, Ms. Guste agreed with the prosecution that she cross-examined every witness the state called at trial. The prosecution noted that Ms. Guste objected to the introduction of photographs of Mr. Wilson's brain as inflammatory and prejudicial, to which Ms. Guste also agreed. Ms. Guste also testified on cross-examination that she had open file discovery in this matter, meaning that she had access to the entirety of the state's file.

The defendant testified that he was arrested on February 3, 2000, and that he met Ms. Guste at his arraignment. According to the defendant, Ms. Guste came into the courtroom and asked "who was Erneal Davis." After the defendant identified himself, Ms. Guste told him that she had been appointed to represent him and that she would visit him in jail. The defendant's family thereafter retained private counsel, however, private counsel later withdrew from the case prior to trial. Ms. Guste was reappointed as the defendant's attorney.

This matter was originally scheduled for trial on October 10, 2000. On that date, the defendant testified that he met Ms. Guste for a second time. Ms. Guste told the defendant that she had been appointed to represent him and that she had read the police report. Ms. Guste asked the defendant if he would be willing to plead guilty to manslaughter. The defendant responded that he would be willing to do so. Ms. Guste told the defendant that she would talk to the judge and that she would come to the jail to talk to the defendant at a later date. According to the defendant, Ms. Guste also told him that the bailiffs would bring him back to the court that afternoon for a hearing on his motions to suppress.

That afternoon, the motion to suppress was denied, and the defendant's trial date was reset to October 25. The defendant testified that Ms. Guste told him that she would come see him in jail, however, the defendant did not see Ms. Guste again until the morning of October 25. Ms. Guste informed the defendant that morning that the court would try the case that day. The defendant testified that he asked Ms. Guste to request a continuance, however, Ms. Guste told him that she could not request a continuance.

According to the defendant, he and Ms. Guste did not discuss his case until after his trial had commenced. The defendant told Ms. Guste that no witnesses were present to testify on his behalf, and the defendant requested that Ms. Guste call his uncle and his father to testify. Ms. Guste told him his father could not be located. The defendant recalled that Ms. Guste called his uncle to testify at trial. However, according to the defendant, Ms. Guste did not interview his uncle before calling his uncle to testify. The defendant further

- 12 -

testified that he did not expect to go to trial on October 25 and did not discuss possible defenses with Ms. Guste prior to trial.

At the conclusion of the hearing, the trial judge indicated that she would take the matter under advisement. On September 25, 2009, the trial judge denied the "Motion to Dismiss Appeal Without Prejudice and Remand for a Hearing on Post Trial Motion or, in the alternative, To Abate Post Trial Motion and Reset Briefing Delays."

Under the circumstances of this case, the defendant cannot meet either prong of the <u>Strickland</u> test. We cannot find that the trial court erred in its finding that Ms. Guste's performance was not deficient. She filed and tried motions in this case, conducted open file discovery, investigated this matter, and attempted to locate defense witnesses (and produced one). She further developed a theory of the case that was consistent with the statements the defendant made to police, made an opening statement, made timely objections, guided the defendant through his direct examination, called rebuttal witnesses, and made an effective closing argument.

In addition, it does not appear that Ms. Guste's performance prejudiced the defendant. The evidence against the defendant was overwhelming. Mr. Mitchell testified that the defendant struck Mr. Wilson with a two-by-four several times and that Mr. Wilson did not provoke the defendant. Mr. Brent observed the defendant beat Mr. Wilson with the two-by-four. Mr. Brent further testified that Mr. Wilson did not threaten, aggravate, or speak to the defendant prior to the defendant's attack. The defendant admitted striking Mr. Wilson in the head, but contended that he merely used a "stick." The defendant also admitted that the defendant "never put his hands" on him and did not "lift his hands to him." Two individuals positively identified the defendant as the perpetrator of this crime. The defendant cannot show that but for Ms. Guste's allegedly unprofessional conduct, the outcome of the trial would have been different considering the weight of the evidence against him.

Nor can we say that the defendant is entitled to a presumption of prejudice because he was denied counsel at a critical stage of a criminal proceeding. Ms. Guste testified that she visited the defendant prior to trial and that she was prepared to go to trial on October 25, 2000. The defendant contends otherwise. However, the defendant has presented no evidence to validate or corroborate his argument. Ms. Guste additionally testified that she was familiar with the facts of the case, that she was aware of the procedural issues of the case, that she made timely objections at trial, and that she

cross-examined each of the state's witnesses.  The defendant did not controvert this testimony.

The defendant has failed to prove that he was denied counsel at a critical stage of the proceedings against him.  Accordingly, this assignment of error has no merit.[14]

The Louisiana Supreme Court then likewise denied petitioner's related writ application without assigning additional reasons.[15]

In his federal application, petitioner again argues that Cronic, not Strickland, is applicable to his claim.  The United States Supreme Court has taken great care to explain the difference between Strickland, which applies to great majority of ineffective assistance claims, and Cronic:

In Strickland, which was decided the same day as Cronic, we announced a two-part test for evaluating claims that a defendant's counsel performed so incompetently in his or her representation of a defendant that the defendant's sentence or conviction should be reversed.  We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," 466 U.S., at 688, 104 S.Ct. 2052; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id., at 694, 104 S.Ct. 2052.  Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," id., at 687, 104 S.Ct. 2052, and the sentence or conviction should stand.

---

[14] State v. Davis, 45 So.3d 203, 209-12 (La. App. 5th Cir. 2010) (No. 09-KA-1109); State Rec., Vol. V of XI.

[15] State v. Davis, 60 So.3d 1249 (La. 2011) (No. 2010-KO-2585); State Rec., Vol. V of XI.

In <u>Cronic</u>, we considered whether the Court of Appeals was correct in reversing a defendant's conviction under the Sixth Amendment without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial.  466 U.S., at 650, 658, 104 S.Ct. 2039.  We determined that the court had erred and remanded to allow the claim to be considered under <u>Strickland</u>'s test.  466 U.S., at 666-667, and n.41, 104 S.Ct. 2039.  In the course of deciding this question, we identified three situations implicating the right to counsel that involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." <u>Id</u>., at 658-659, 104 S.Ct. 2039.

First and "[m]ost obvious" was the "complete denial of counsel." <u>Id</u>., at 659, 104 S.Ct. 2039.  A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at "a critical stage," <u>id</u>., at 659, 662, 104 S.Ct. 2039, a phrase we used in <u>Hamilton v. Alabama</u>, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and <u>White v. Maryland</u>, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (<i>per curiam</i>), to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused.  Second, we posited that a similar presumption was warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." <u>Cronic</u>, <i>supra</i>, at 659, 104 S.Ct. 2039.  Finally, we said that in cases like <u>Powell v. Alabama</u>, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected. <u>Cronic</u>, <i>supra</i>, at 659-662, 104 S.Ct. 2039.

<u>Bell v. Cone</u>, 535 U.S. 685, 695-96 (2002).

Petitioner argues that his case falls under the first type of situation described in <u>Cronic</u>.[16]  Specifically, he argues that his counsel's failure to meet with him for a more extensive period of time prior to trial amounted to a complete denial of counsel during a "critical stage" of the proceedings as that term is used in <u>Cronic</u>.  In support of his claim, he cites <u>Mitchell v. Mason</u>, 325 F.3d 732 (6th Cir. 2003).  In that case, Mitchell's attorney met with him for only a total of six minutes

---

[16] Rec. Doc. 3, p. 27.

prior to trial and had been suspended from practice for the month prior to the trial.  Under those facts, the Sixth Circuit held that <u>Cronic</u>, *not* <u>Strickland</u>, applied because there had been a complete denial of counsel at a critical stage of the proceeding, i.e. the pretrial preparation.

Whether <u>Mitchell</u> was correctly decided is questionable at best.[17]  Nevertheless,  in any event, it clearly is not controlling.  As noted, the state courts rejected petitioner's <u>Cronic</u> argument, and, under the AEDPA, the only question before this Court is whether that state court decision constituted an "unreasonable application" of clearly established federal law.  28 U.S.C. § 2254(d)(1); <u>see</u> <u>Gomez v. Thaler</u>, 526 Fed. App'x 355, 359 (2013).  In answering that question, this Court looks to the decisions of the United States Supreme Court, not to the decisions of the various federal Courts of Appeals.  <u>See, e.g.</u>, <u>Gomez</u>, 526 Fed. App'x at 359 n.3; <u>see also</u> <u>Marshall v. Rodgers</u>, 133 S.Ct. 1446, 1450-51 (2013) ("Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." (citations omitted)).  Because there is no United States Supreme Court precedent holding that a criminal defendant's limited time to confer with his attorney prior to trial is tantamount to complete denial of counsel at a critical stage of the proceedings under <u>Cronic</u>, this Court simply cannot say that the state

---

[17]  <u>See</u> <u>Bell v. Quintero</u>, 125 S.Ct. 2240, 2243 (2005) (Thomas, J., dissenting) (noting that <u>Mitchell</u> was a "dubious application[] of this Court's precedents").  This Court notes that the United States Fifth Circuit Court of Appeals has held that alleged ineffectiveness due to a delay in appointing counsel during the pretrial preparation period is properly assessed under <u>Strickland</u>, not <u>Cronic</u>.  <u>Sterling v. Dretke</u>, 100 Fed. App'x 239, 246-47 (5th Cir. 2004).

court unreasonably applied clearly established federal law in rejecting petitioner's argument.  <u>See id.</u> at 359; <u>see also</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law.  Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized."); <u>Wilson v. Cain</u>, 641 F.3d 96, 100 (5th Cir. 2011).

Furthermore, in any event, <u>Mitchell</u> is easily distinguishable, and its finding that <u>Cronic</u> was controlling under the facts of that case is inapplicable under the facts of the instant case. In <u>Mitchell</u>, counsel had done little, if anything, to prepare for trial.  For example, as mentioned previously, Mitchell's counsel had in fact been suspended from practicing law for the month prior to trial, being reinstated the very day jury selection began in Mitchell's trial.  <u>Mitchell</u>, 325 F.3d at 735. Moreover, Mitchell "alleged that [his lawyer] had not visited him once in prison nor had Mitchell had the opportunity to speak with his lawyer in court."  <u>Id.</u>  The Sixth Circuit stated that "the undisputed amount of time" Mitchell spent with his lawyer prior to trial was "approximately six minutes spanning three separate meetings in the bullpen."  <u>Id.</u> at 741.  There was no other evidence of counsel's pretrial preparation.

Here, however, it is evident that Guste did prepare for trial.  Admittedly, there is some question as to whether she was able to interview petitioner himself prior to trial.  At a hearing held on August 31, 2009, many years after the trial, Guste testified she had in fact discussed the case with petitioner, although she could not remember where the discussion occurred.[18]  In his federal application, petitioner disputes the accuracy of that testimony, noting that it is inconsistent with a

---

[18] State Rec., Vol. V of XI, transcript of August 31, 2009, pp. 7-8.

statement Guste made at a sentencing hearing held on December 18, 2000, shortly after trial.  As petitioner notes, he had similarly complained at that hearing that Guste had not visited him prior to trial.  In response, Guste stated:  "I would like to note that Mr. Davis, upon my appointment to represent Mr. Davis, he refused to speak to me and told me that he was going to get a real lawyer ...."[19]  Petitioner essentially argues that Guste's statement at the sentencing hearing, which was much closer in time to the trial, is more likely to be accurate.  However, while that may well be true, it does not significantly bolster petitioner's <u>Cronic</u> claim for the following reasons.

First, it is ludicrous to suggest that a criminal defendant can refuse to speak to his attorney and then subsequently argue that his rights were violated because he was "denied" the opportunity to discuss his case with his attorney.  Moreover, even if Guste was faced with a client who refused to speak to her, it is clear that she met her obligation to prepare for trial in the other ways that remained open to her.  For example, at the 2009 hearing, she testified that she had been given "open file" discovery in the case.[20]  She further testified that she hired an investigator to assist her in conducting the pretrial investigation.[21]  She also spoke to the prosecution's main witness,[22] and even

_____

[19] State Rec., Vol. VII of XI, transcript of December 18, 2000, pp. 4-5.

[20] State Rec., Vol. V of XI, transcript of August 31, 2009, p. 16.

[21] State Rec., Vol. V of XI, transcript of August 31, 2009, pp. 8-10 and 13.  At the sentencing hearing on December 18, 2000, she similarly stated that she "had an investigator investigate the entire case prior to [petitioner] retaining a private attorney which report I did turn over to the attorney whom he retained." State Rec., Vol. VII of XI, transcript of December 18, 2000, p. 5.

[22] State Rec., Vol. V of XI, transcript of August 31, 2009, p. 13.

petitioner stated that Guste spoke to his mother and girlfriend at his arraignment.[23]  Under these facts,

petitioner has not established that he suffered a complete denial of counsel during the pretrial

preparation period, and neither <u>Mitchell</u> nor <u>Cronic</u> is applicable.

      Lastly, out of an abundance of caution, the Court further finds that petitioner's claim

also fails under a proper <u>Strickland</u> analysis.   As noted previously, <u>Strickland</u> requires that a

petitioner demonstrate both that counsel's performance was deficient and that the deficient

performance prejudiced his defense.  <u>Strickland</u>, 466 U.S. at 697.  To prevail on the deficiency prong

of that inquiry, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional

minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir.

2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."

<u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).  To prevail on the prejudice prong of the inquiry,

a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  In this

context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."

<u>Id</u>.  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs

of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance

claim without addressing the other prong.  <u>Id</u>. at 697.

      In the instant case, petitioner has not met his burden to prove that Guste's pretrial

preparation was deficient.  The record shows that she prepared for trial in several ways, including

---

[23] State Rec., Vol. V of XI, transcript of August 31, 2009, p. 18.  When petitioner was
subsequently asked whether his family contacted Guste, petitioner answered, "I can't recall."  State
Rec., Vol. V of XI, transcript of August 31, 2009, p. 21.

availing herself of the state's "open file" discovery and even hiring an investigator.  Further, the transcript simply does not support his suggestion that Guste performed deficiently due to an inadequate pretrial investigation.[24]  On the contrary, the trial transcript reflects that Guste mounted a spirited defense, vigorously cross-examining the prosecution's witnesses, and argued that petitioner was guilty of nothing more than manslaughter, which was the only potentially viable defense in light of the fact that he was undeniably the perpetrator of the crime.

　　　　　Moreover, petitioner's claim clearly fails on the prejudice prong of the Strickland analysis.  He has not demonstrated that further information beneficial to the defense would have been revealed in additional meetings with his attorney or through additional pretrial investigation.  Additionally, considering the overwhelming evidence of his guilt, including his pretrial statement, his admission under oath at trial that he was the perpetrator, and the testimony of the eyewitnesses, it simply cannot be said that there is a reasonable probability that the result of the trial would have been different if only Guste had been better prepared.  Rather, as the United States Fifth Circuit Court of Appeals has noted:  "If the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail."  Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir. 1989).  That maxim is certainly applicable to the instant case.

　　　　　For all of these reasons, petitioner's ineffective assistance of counsel claim should be denied.

---

[24] The trial transcript is included in Volume VII of the state court record.

IV.  Petitioner's Claims in His Amended Application

In his amended application, petitioner added claims alleging that the grand jury foreperson and members were selected in an unconstitutional and discriminatory manner.  However, even in the unlikely event that those claims could be considered timely,[25] they are clearly procedurally barred for the following reasons.[26]

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must

---

[25] To be timely, the new claims must have been asserted within the one-year federal limitations period established by the AEDPA.  28 U.S.C. § 2244(d)(1).  Because petitioner's motion to amend was filed no earlier than March 18, 2014, long after the limitations period seemingly expired in this case, the amendments would appear to be timely only if they "relate back" to the original federal application filed on December 20, 2012.  See Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003) ("A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."); Rec. Doc. 3, p. 15 (petitioner's declaration that his federal application was placed in the prison mailing system on December 20, 2012).  However, the United States Supreme Court has held that claims raised in an amendment to a *habeas* petition do not automatically relate back merely because they arose out of the same trial and conviction.  Mayle v. Felix, 545 U.S. 644, 650 (2005).  The Supreme Court went on to explain that amendments do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  Id.  Here, petitioner's new claims concerning selection of the grand jury foreperson and members would not "relate back" because they are legally and factually distinct from the claim asserted in the original federal application.

[26] Because petitioner added these claims after the state had already filed its response in this proceeding, the state has not had the opportunity to raise this defense.  However, it is clear that the Court may raise the defense *sua sponte*.  Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir. 2006); Magouirk v. Phillips, 144 F.3d 348, 357-58 (5th Cir. 1998).  Accordingly, petitioner is hereby specifically instructed that this Report and Recommendation is notice to him that this Court is *sua sponte* raising the defenses.  See Prieto, 456 F.3d at 519; Magouirk, 144 F.3d at 359.

> "clearly and expressly" indicate that it rests on state grounds which bar
> relief, and the bar must be strictly or regularly followed by state
> courts, and applied to the majority of similar claims.  This rule applies
> to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

There is no question that petitioner's new claims concerning the grand jury were denied by the state courts on procedural grounds. The state district court held that the claims were "procedurally barred under LSA-C.Cr.P. art. 930.4, as they could have been, but were not, raised on appeal."[27]  Although the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons,[28] "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground." Finley, 243 F.3d at 218.

Clearly, the procedural rule on which the state courts relied was "independent" and "adequate."  Federal courts have repeatedly and consistently held that Louisiana's rule that a claim regarding an appealable issue is waived if not asserted on direct appeal is an independent and adequate state court rule to support a procedural bar in federal court. See, e.g., Hurd v. Cain, Civ.

_____

[27] State Rec., Vol. V of XI, Order dated March 21, 2012.  This Court notes that the state court also alternatively found that the claim was meritless.  However, that alternative finding is of no moment in determining whether the claim is procedurally barred, because it is clear that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

[28] Davis v. Cain, No. 12-KH-403 (La. App. 5th Cir. June 1, 2012); State ex rel. Davis v. State, 99 So.3d 649 (La. 2012) (No. 2012-KH-1528); State Rec., Vol. XI of XI.

Action No. 09-3112, 2009 WL 3063354, at *7 (E.D. La. Sept. 23, 2009); Simms v. Cain, Civ. Action

No. 07-966, 2008 WL 624073, at *27 (E.D. La. Mar. 4, 2008); Dorsey v. Louisiana, Civ. Action No.

07-036, 2007 WL 1747014, at *4 (E.D. La. June 15, 2007); Hill v. Cooper, Civ. Action No. 04-2588,

2007 WL 458207, at *7 (E.D. La. Feb. 8, 2007); Stevenson v. Cain, Civ. Action No. 06-1244, 2006

WL 2850167, at *14 (E.D. La. Oct. 4, 2006).

Where, as here, the state courts have rejected a petitioner's claim based on an

independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner

demonstrates either cause and prejudice or that a failure to address the claim will result in a

fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In the

instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the

petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816

(5th Cir. 1999) (quotation marks omitted).  Here, petitioner appears to argue that he can establish

"cause" for his default under the exception recently recognized by the United States Supreme Court

in Martinez v. Ryan, 132 S.Ct. 1309 (2012).  However, for the following reasons, Martinez is

inapplicable in this case.

In Martinez, the United States Supreme Court recognized a new way in which a

petitioner could, in limited circumstances, show "cause" for his default of *a claim that his trial*

*counsel was ineffective*.  Specifically, the Supreme Court held:  "Where, under state law, claims of

ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a

procedural default will not bar a federal habeas court from hearing *a substantial claim of ineffective*

*assistance at trial* if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  <u>Martinez</u>, 132 S.Ct. at 1320 (emphasis added).  In the instant case, <u>Martinez</u> simply does not apply because petitioner's procedurally barred claims concern alleged improprieties in the manner in which the grand jury foreperson and members were selected, *not ineffective assistance of counsel at trial.*

Because <u>Martinez</u> is not applicable, and because petitioner has not shown any other "cause" for the default of the claims, "cause" has not been established.  Moreover, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  <u>Martin v. Maxey</u>, 98 F.3d 844, 849 (5th Cir. 1996).

In that petitioner has not met the "cause and prejudice" test, this Court need consider his claims only if the application of the procedural bar would result in a "fundamental miscarriage of justice."  However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  <u>Finley</u>, 243 F.3d at 220 (citations omitted).  Here, petitioner does not even argue that he is actually innocent, and, as previously noted, the evidence of his guilt was in fact overwhelming.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, the claims in petitioner's amended application are procedurally barred and should therefore be denied on that basis.

- 24 -

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's federal application for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[29]

New Orleans, Louisiana, this twenty-first day of April, 2014.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[29] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.